# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LAMONDRE MOORE,

        **Plaintiff,**

    **v.**                          **Case No. 14-CV-745**

DAVID A. CLARKE, JR., et al.,

        **Defendants.**

## DECISION

The plaintiff, Lamondre Moore, is a Wisconsin state prisoner. Moore alleges that, while confined at the Milwaukee County Jail, the defendants failed to properly treat his skin wounds and failed to provide needed assistance with showering, in violation of his rights under the Eighth Amendment to the United States Constitution, the Americans with Disabilities Act, the Rehabilitation Act, and Wisconsin state law.

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was assigned according to the random assignment of civil cases pursuant to General Local Rule 3(a) (E.D. Wis.). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73 (E.D. Wis.).

Defendants Debra Burmeister, David A. Clarke, Vicki Dembowiak, Milwaukee County, and the Milwaukee County Sheriff's Department ("Medical Defendants") filed a motion for summary judgment (ECF No. 51) related to Moore's medical claims. Defendants Burmeister, Clarke, Milwaukee County, and the Milwaukee County Sheriff's Department ("Non-Medical Defendants") filed a motion for summary judgment (ECF No. 58) "as to claims not associated with the provision of health care services." Both motions have been fully briefed and are ready for resolution.

## FACTS

### A.      Parties

Moore was confined at the Milwaukee County Jail ("Jail") from October 13, 2013, until he was transferred to another facility on September 15, 2014. (ECF No. 69, ¶ 1.) Defendant David A. Clarke, Jr., is the Milwaukee County Sheriff and the Chief Administrator of the Sheriff's Office, which includes the Jail. (ECF No. 69, ¶ 64.) At all times relevant hereto, defendant Debra Burmeister was employed by Milwaukee County in the Office of the Sheriff, held the rank of Major, and was assigned to work as the Milwaukee County Jail Administrator. (ECF No. 69, ¶ 66.) As Jail Administrator, Burmeister was in charge of its day-to-day operations. (ECF No. 69, ¶ 68.) Defendant Vicki Dembowiak is a nurse employed at the Jail. (ECF No. 69, ¶ 59.)

**B.    Moore's Capabilities**

Moore, who is now thirty-six years old, sustained burns when he was four years old that damaged his skin, fingers, and feet.  (ECF No. 69, ¶¶ 2-3.)  His right hand is a nub without a thumb or fingers, and his left hand has a thumb and no fingers.  (ECF No. 73, ¶ 12.)  He has no mobility in his left ankle and cannot move his toes on his left foot.  (ECF No. 73, ¶ 8.)  His left ankle is bent forward like a ballerina and is stuck in that position; when Moore walks his left foot touches the ground in the same spot every time because it has no mobility.  (ECF No. 73, ¶ 9.)  Moore's left foot has a shoe size of approximately size 3, while his right foot is approximately size 8.  (ECF No. 73, ¶ 11.)

Moore has difficulty walking and cannot grab things with a single hand.  (ECF No. 73, ¶ 7.)  He cannot put on socks, put on a shirt with buttons, or tie his shoes.  (ECF No. 73, ¶ 22.)  Moore could dress himself at the Jail because the Jail uses elastic pants and no buttons.  (ECF No. 69, ¶ 44.)  Moore has his own shoes which allow him to walk.  (ECF No. 73, ¶ 7.)  On November 3, 2013, Moore was given his own shoes at the Jail at which time it was noted in his medical records that he "[a]mbulates with limp without difficulty."  (*Id.*)

Moore's skin develops wounds very easily because his skin is so thin.  (ECF No. 73, ¶ 4.)  He has had sores develop, heal, and reoccur since he was burned thirty-two years ago.  (ECF No. 69, ¶ 4.)  Moore can place 2x2 band aids on his wounds because doing so does not require the use of two hands.  (ECF No. 69, ¶ 5.)

Moore's Uncle, Scotty Moore, is Moore's personal caretaker and has been taking care of Moore since 1984. (ECF No. 73, ¶¶ 14, 16.) He helped Moore with clothing, bathing, and other activities of daily life. (ECF No. 73, ¶ 19.)

## C. Wound Care

When Moore was admitted to the Jail, he was cared for in the Special Medical Unit from October 14, 2013, until he was transferred to the General Population Unit on November 8, 2013. (ECF No. 69, ¶ 10.) When he was admitted to the Special Medical Unit, Moore was noted to have sores on both of his legs that were cultured and infected. (ECF No. 69, ¶ 11.) While in the Special Medical Unit, a physician or nurse practitioner saw Moore daily. (ECF No. 69, ¶ 12.) His wounds were cleaned, treated with ointments, and either bandaged or left open to the air. (*Id.*) When Moore left the Special Medical Unit, his wounds had improved; there was healthy pink tissue in the wound beds and no signs or symptoms of infection. (ECF No. 69, ¶ 13.)

When he was discharged from the Special Medical Unit, Moore had a doctor's order for daily help changing his dressings. (ECF No. 73, ¶ 32.) Moore transferred to the General Population Unit on November 8, 2013, and remained there until September 15, 2014.

It is undisputed that Moore was not provided with daily assistance to change his dressings. (ECF No. 73, ¶ 34.) Although Moore could clean his sores in his cell with water and Dial soap and could apply ointment and lotion to his sores (ECF No. 69, ¶¶

7-8), the parties dispute whether Moore needed daily help to change his dressings and whether he could tend to his wounds himself.  According to Moore, he could not clean his wounds himself and could not tape and cut the dressings himself because to do so required the use of two hands.  (ECF No. 73 ¶ 33.)  The defendants contend that Moore could remove bandages, clean his wounds, leave them open to the air, and apply band aids.  (*Id.*)  The defendants deny that daily assistance with dressing changes was needed. According to the defendants, there is no evidence that daily dressing changes were needed throughout Moore's incarceration--for example, at times when he had no wounds.  (ECF No. 73, ¶ 35.)

The parties also dispute how often Jail staff assisted Moore with dressing changes.  According to Moore, Jail staff provided assistance "only sporadically" and there were periods of time when his dressings were not changed for many days.  (ECF No. 73, ¶¶ 35, 41.)  According to the defendants, Moore was given assistance with dressing changes "on a regular basis."  (ECF No. 73, ¶ 35.)

It is undisputed that Moore was seen almost every day by a nurse who made rounds to deliver medications. (ECF No. 73, ¶ 36.) According to Moore, when he asked for assistance the nurses would tell him they would come back but never did.  (*Id.*)  The defendants deny that the nurses refused to provide Moore with care.  (*Id.*)

According to Moore, during times when he went days without a dressing change, his wounds would smell strongly.  (ECF No. 73, ¶ 39.)  The wounds would

begin to smell after two days and would get worse every additional day that his dressing was not changed. (*Id.*) Moore asserts that his wounds were painful and ached; the delay in healing caused by infrequent dressing changes caused Moore to have an extended period of pain that could have been prevented if his dressings were changed daily. (ECF No. 73, ¶ 42.)

The parties dispute whether Moore's wounds healed while he was at the Jail. According to the defendants, the wounds he had when he first came to the Jail healed, and others formed and healed. (ECF No. 73, ¶ 46.) According to Moore, his wounds never healed during his time in the Jail. (ECF No. 73, ¶¶ 44-46.) Moore's medical records from Dodge Correctional Institution, the institution to which Moore was transferred after leaving the Jail, reflect that he had three wounds when he arrived. (ECF No. 73, ¶ 47.) Upon arrival Moore was placed in the infirmary at Dodge Correctional Institution. (ECF No. 73, ¶ 48.)

**D.     Showers**

Moore had a doctor's order for assistance with showering. (ECF No. 73, ¶ 50.) His medical records entry from November 20, 2013, states in part:

> Pt. to have assistance with showering QOD [every other day] with shower chair. Pt. requires assistance getting into and out of shower. Application of clean socks post shower. Pt. able to wash self up independently once in the shower. Pt. provided with dial soap and A&D ointment while in the clinic.

(ECF No. 55-1 at 7.)

6

It is undisputed that Moore was "allowed" to shower every day while he was in General Population. (ECF No. 69, ¶ 31.) However, the parties dispute whether Moore was physically able to shower daily without assistance. According to Moore, he needed assistance getting in and out of the shower, turning the water on and off, and cleaning places that he could not reach. (ECF No. 73, ¶ 20.) The defendants, on the other hand, state that Moore was capable of showering himself at the Jail because the showers were handicap accessible, there was no step in the shower, the water could be turned on by pressing a button, there were grab bars on the wall, and there was a fold down bench or chair on which to sit. (*Id.*)

The parties dispute how often Moore was provided assistance with showering. According to Moore, he did not take a shower from November 9, 2013, to June 17, 2014. (ECF No. 69, ¶ 34.) He states that, although the defendants offered him a shower chair, they did not offer him any assistance showering from November 9, 2013, to June 17, 2014, because the corrections officers said it was not their job to get him into shower. (ECF No. 73, ¶ 59.) Medical records state that, after Moore was transferred to the General Population Unit, he was offered a shower chair or received assistance showering on the following dates: November 20, November 25-26, November 29, December 3, 2013, June 17, June 20, June 25, July 3, July 10, July 15, July 17, July 22, July 24, July 29, July 31, August 5, August 8, August 12, August 14, August 21, August 26,

August 28, September 2, September 4, September 9, and September 11, 2014. (ECF No. 69, ¶ 32.)

According to the defendants, efforts were made to have someone assist Moore with showering twice per week but, at a minimum, he received assistance with showering once per week and was given a shower chair. (ECF No. 69, ¶ 34.) The defendants state that Moore's assertion that he was not provided showers from November 9, 2013, to June 17, 2014, is not supported by Jail practice in providing showers nor by the medical records. (ECF No. 73, ¶ 59.) The defendants also assert that Moore threatened to sexually assault a female nurse, as a result of which a decision was made to require that showering assistance be limited to male staff, limiting the number of staff available to assist Moore. (*Id.*)

## E.    Grievances

Grievance forms are available to inmates in every Jail housing unit. (ECF No. 69, ¶ 111.) Consistent with Jail policy, completed grievance forms that have been returned to the correctional officer in the housing unit are passed on to the Jail lieutenant assigned to address the grievances. (ECF No. 69, ¶ 112.) The Jail lieutenant reviews and evaluates the contents of the grievance, inputs the information from the grievance into an electronic log and, depending on the nature of the grievance, may respond directly to the inmate, investigate the allegations further, or refer the grievance to a third party for investigation and/or response. (ECF No. 69, ¶ 113.) Pursuant to Jail

policy, grievances filed by Moore addressing medical issues were referred to the Jail medical staff for evaluation and resolution. (ECF No. 69, ¶¶ 114-115.)

In addition to the above procedures, Moore asserts that grievances are submitted to the Lieutenant in charge of grievances, then the Lieutenant passes the grievance along to the Captain for entry in the grievance database, and then the grievances are placed in the grievance database for the "command staff" to review. (ECF No. 73, ¶ 84.) The defendants dispute that this is true, arguing that it is inconsistent with the procedures set forth above.

The grievance database shows who submitted the grievance, the date and time the grievance was submitted, the type of grievance, and whether the grievance was resolved. (ECF No. 73, ¶ 85.) According to Moore, every week the command staff meets to discuss ongoing issues at the Jail, including the grievance report printed out from the grievance database. (ECF No. 73, ¶ 86.) The command staff was apprised of inmate grievances and informed regarding when grievances were filed, the nature of the grievance, whether the grievance was ongoing or resolved, and whether the grievance was sustained. (ECF No. 73, ¶ 87.)

According to the defendants, during the relevant timeframe the command staff met, at most, every other week. Command staff meetings included high-level staff from all of the departments in the Sheriff's Office, who did not meet specifically to discuss issues in the Jail. Although Burmeister came to command staff meetings prepared to

provide data regarding all manner of operations issues in the Jail, including the number of grievances, the command staff was never provided with, nor was it interested in reviewing, a grievance report providing the details of inmate grievances. (ECF No. 73, ¶ 86.)

Moore filed numerous grievances at the Jail complaining that he was not receiving assistance with showering or dressing changes as ordered by his doctor. (ECF No. 73, ¶ 72.) He submitted grievances on November 17, 2013, December 8, 2013, December 11, 2013, and December 17, 2013, saying that his dressings were not being changed per doctor's orders. (ECF No. 73, ¶ 74.) Moore also submitted grievances on May 13, 2014, May 23, 2014, and May 24, 2014, for failure to change his dressings. (ECF No. 73, ¶ 75.) On June 2, 2014, and June 5, 2014, Moore submitted grievances complaining of inadequate medical care, which included complaints that his wound dressings had not been changed. (ECF No. 73, ¶¶ 76, 77.)

Moore submitted grievances on June 19, 2014, June 26, 2014, July 1, 2014, July 10, 2014, and August 4, 2014, complaining that he did not receive assistance showering or bathing. (ECF No. 73, ¶¶ 78, 79.)

When Dr. Thomas Gable was the Medical Director at the Jail, he kept Burmeister informed about issues with his inmate patients which might impact the operations of the Jail. (ECF No. 69, ¶ 93.) Dr. Gable would apprise Burmeister, as needed, of the circumstances of inmates who were receiving medical care and who might be filing

grievances.  (ECF No. 69, ¶ 95.)  A November 18, 2013 email from Dr. Gable to

Burmeister and other corrections and medical staff advised them that Moore might file

a grievance: "Patient with history of severe burns since age 4.  Has muscle contractures

and skin deformities.  Is able to function for himself, however prefers to have staff wait

on him.  Was scheduled for follow up appointment with me on November 15th which

he refused to come.  Informed by staff if he has any medical concerns to place in for a

sick call visit."  (ECF No. 69, ¶ 96.)

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A.,*

*Inc.*, 629 F.3d 665, 668 (7th Cir. 2011).  "Material facts" are those under the applicable

substantive law that "might affect the outcome of the suit."  *See Anderson*, 477 U.S. at

248.  A dispute over "material fact" is "genuine" if "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."  *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the

assertion by:

> (A) citing to particular parts of materials in the record, including
> depositions, documents, electronically stored information, affidavits or
> declarations, stipulations (including those made for purposes of the
> motion only), admissions, interrogatory answers, or other materials; or (B)

showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

# ANALYSIS

As an initial matter, the Milwaukee County Sheriff's Department is not a legal entity separable from the county government which it serves and is not subject to suit. *See Whiting v. Marathon County Sheriff's Dep't*, 382 F.3d 700, 704 (7th Cir. 2004); *see also Buchanan v. Kenosha*, 57 F. Supp. 2d 675, 678 (E.D. Wis. 1999) (citing cases). Therefore, the court will dismiss Moore's claims against the Milwaukee County Sheriff's Department.

## A.  Constitutional Claims

The Medical Defendants contend that Moore's § 1983 claims must be dismissed because he does not identify the individuals who allegedly acted with deliberate indifference. They also contend that, even if Moore did identify the individuals, the record does not support a claim for deliberate indifference to a serious medical need. For starters, they contend that Moore does not have a serious medical need. They also

contend that Moore received regular, ongoing care, including regular access to the shower, which precludes a finding of indifference.

The Non-Medical Defendants contend that Moore's § 1983 claims against Clarke and Burmeister should be dismissed because they were not personally involved in the claims and because they are entitled to qualified immunity. These defendants also contend that Moore cannot establish a viable claim against Milwaukee County under *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978), because there is no underlying constitutional violation and because Moore cannot establish any unconstitutional practice or policy.

In response, Moore contends that the defendants violated his rights under the Eighth Amendment. According to Moore, he suffered from an objectively serious medical condition in that his need for dressing his wounds and his need for assistance in the shower were both objectively serious. Moore also contends that the defendants knew about his need for assistance with dressing changes and his need for assistance with showering but purposefully chose not to assist him. He states that the defendants knew that he was continually submitting grievances for inadequate medical care that were sustained, and that they engaged in a policy and practice of failing to respond to his grievances. Moore further states that "[t]he conduct was one of a series of incidents amounting to an unconstitutional practice so permanent, well-settled, and known to Milwaukee County as to constitute a 'custom or usage' with force of law; and the

Case 2:14-cv-00745-WED   Filed 12/21/15   Page 13 of 25   Document 83

conduct was caused by a decision of jail administrators with final policymaking authority in the area in question." (ECF No. 68 at 21, 23.)

### 1. Eighth Amendment Medical Care Standard

"The Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (quoting *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009); *see also Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Prison officials violate the Constitution if they are deliberately indifferent to a prisoner's serious medical needs. *Arnett*, 658 F.3d at 750 (citing *Estelle*, 429 U.S. at 104). Accordingly, a claim based on deficient medical care must demonstrate 1) an objectively serious medical condition, and 2) an official's deliberate indifference to that condition. *Arnett*, 658 F.3d at 750 (citing *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)). "[D]eliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez*, 577 F.3d at 828 (quoting *Estelle*, 429 U.S. at 104).

"A medical need is considered sufficiently serious if the inmate's condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). "[A] medical condition need not be life-threatening to be serious; rather, it could be a

condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Roe*, 631 F.3d at 857 (quoting *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010)). A broad range of medical conditions may be sufficient to meet the objective prong of a deliberate indifference claim, including a dislocated finger, a hernia, arthritis, heartburn and vomiting, a broken wrist, and minor burns sustained from lying in vomit. *Roe*, 631 F.3d at 861 (citing *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) (collecting cases)). On the other hand, a prison medical staff "that refuses to dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue – the sorts of ailments for which many people who are not in prison do not seek medical attention–does not by its refusal violate the Constitution." *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (1997) (quoting *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996)).

To demonstrate deliberate indifference, a plaintiff must show that the defendant acted with a sufficiently culpable state of mind, something akin to recklessness. *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2001). A prison official acts with a sufficiently culpable state of mind when he or she knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. *Roe*, 631 F.3d at 857. However, a prisoner "need not prove that the prison officials intended, hoped for, or desired the harm that transpired." *Walker*, 293 F.3d at 1037. Nor does a prisoner need to show that he was literally ignored. *Arnett*, 658 F.3d at 755 (citing *Greeno v. Daley*, 414 F.3d 645, 653

(7th Cir. 2005)). That the prisoner received some treatment does not foreclose his deliberate indifference claim if the treatment received was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate his condition." *Greeno*, 414 F.3d at 654 (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)). Deliberate indifference is a high standard; it requires proof that the state officials actually knew of the inmate's serious medical need and that they disregarded it. *Walker*, 293 F.3d at 1037.

### 2. Moore's § 1983 Claim

The condition of Moore's skin generally, the presence of skin wounds specifically, and the doctors' orders for daily dressing changes and for shower assistance every other day demonstrate that Moore had "serious medical needs" under the Eighth Amendment. *See Roe*, 631 F.3d at 857. The issue is whether the defendants acted with deliberate indifference to those serious medical needs.

It is undisputed that Moore had an order for daily dressing changes when he transferred to the General Population Unit. It is also undisputed that he did not receive daily dressing changes. The parties dispute much of the remainder of the facts related to this claim, i.e., whether the order for daily dressing changes was in effect for the duration of Moore's stay at the Jail, whether Moore's wounds healed, whether he still had wounds when he left the Jail, and whether he was capable of caring for his wounds himself.

16

With regard to Moore's shower claim, it is undisputed that he had a doctor's order for assistance with showering every other day. Moore claims that he did not shower between November 9, 2013, to June 17, 2014, over seven months, because Jail staff would not assist him. The defendants contend that Moore did not need assistance because the Jail showers are handicap accessible and they submitted photographs of the showers to prove it. The defendants claim that Moore could have showered daily on his own if he wanted to, but that, in any event, he received assistance showering at least once a week.

### a. Burmeister, Clarke, and Dembowiak

Only a defendant who is personally responsible for depriving a plaintiff of a constitutional right may be held liable under § 1983. *Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008). If someone else has committed the act that resulted in the constitutional deprivation, then the defendant is personally responsible, and thus liable under § 1983, only if he knows about the other person's act, has a realistic opportunity to prevent it, but deliberately or recklessly fails to do so. *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009).

Burmeister states that she was not directly involved in any decisions related to Moore's health care. (ECF No. 62, ¶ 8.) She also states that she had no specific information about Moore's medical needs, nor would she have been apprised of "routine medical care that he was receiving from the medical staff at the Jail." (ECF No.

62, ¶ 9.) However, according to a former Corrections Captain at the Jail, Keona Garth-Dickens, Burmeister created a database for inmate grievances, from which database a report of grievances was generated and reviewed at weekly command staff meetings. (ECF No. 67-3, ¶¶ 6-9, Ex. B.) Burmeister attended these weekly Jail command staff meetings. While the parties dispute the level of detail in which command staff discussed the inmate grievances, a reasonable fact finder could conclude that, given the number of grievances Moore filed, Burmeister knew that Moore repeatedly complained that Jail staff was not providing him with doctor-ordered care and that she was deliberately indifferent to his medical needs by failing to exercise her authority to make sure he received the care ordered by the prison doctor. *See Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015) ("deliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to it") (internal quotation omitted) (quoting *Vance v. Peters*, 974 F.3d 987, 992-93 (7th Cir. 1996)). Once an official is alerted to an excessive risk to inmate safety or health through a prisoner's correspondence, "refusal or declination to exercise the authority of his or her office may reflect deliberate disregard." *Id.* (quoting *Vance*, 974 F.3d at 993). A reasonable fact finder could conclude that Burmeister acted with deliberate indifference by ignoring Moore's plight. *See Arnett*, 658 F.3d at 753-54, 755.

The defendants contend that Burmeister is entitled to qualified immunity from Moore's charges. Qualified immunity "protects government officials from liability for

civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Determining whether a state official is entitled to qualified immunity involves two inquiries: "(1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Williams v. City of Chicago*, 733 F.3d 749, 758 (7th Cir. 2013) (citation omitted). The court has already determined that the facts support a finding of a constitutional violation and, therefore, the court looks to whether the constitutional right was clearly established at the time of the alleged violation. It was. *See Estelle*, 429 U.S. at 103; *Arnett*, 658 F.3d at 753-54; 755. Accordingly, the court will deny summary judgment as to Burmeister.

On the other hand, the record does not support a finding that Clarke was personally involved in Moore's care. Although Moore contends that Clarke was aware of his grievances because he attended the command staff meetings, the record does not support that contention. The court will dismiss Moore's § 1983 claims against Clarke.

Likewise, the record does not support a finding that Dembowiak was personally involved in a constitutional deprivation. It is undisputed that Dembowiak was a nurse at the Jail and she acknowledges that she remembers Moore. Beyond that, the record is

devoid of facts indicating that Dembowiak was involved in Moore's care. Accordingly, the court will dismiss Moore's § 1983 claims against Dembowiak.

### b. Milwaukee County

In order to prevail on a § 1983 claim against Milwaukee County, Moore would have to demonstrate that he suffered a deprivation of his constitutional rights based on some official policy, widespread custom, or deliberate act of a county decision maker of the municipality or department. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690-91 (1978). It is undisputed that Moore filed numerous grievances complaining of inadequate medical care. The parties dispute whether Moore's medical care was inadequate. They also dispute whether Jail command staff were aware of the substance of Moore's numerous grievances.

With regard to Moore's claim against Milwaukee County, the defendants contend that Moore's medical care was a medical issue for medical personnel. They contend that they would have been notified if there was a problem and that they were not notified of a problem. However, Moore tried to notify them with all of the grievances he submitted. At least one of the grievances he submitted in December 2013 was not responded to until April 11, 2014. (ECF No. 73, ¶ 74.) The defendants contend that the delay was inconsequential because Moore was receiving wound care and assistance with showering in the interim. But those facts are in dispute. A reasonable fact finder could conclude that Milwaukee County has a practice of not responding to

grievances and that such practice resulted in the ongoing violation of Moore's constitutional rights. Therefore, Moore's *Monell* claim against Milwaukee County survives.

**B.     Americans with Disabilities Act and Rehabilitation Act Claims**

The Medical Defendants contend that either the Americans with Disabilities Act or the Rehabilitation Act claim must be dismissed because the claims are duplicative. They also contend that the individual defendants are entitled to summary judgment on both claims. Lastly, they contend that Moore was not denied accommodation, nor was he discriminated against, because there is no evidence that the defendants intentionally acted against him because of his disability or that Moore was prevented from receiving medical care or from showering. The Non-Medical Defendants join in the Medical Defendants' arguments that Moore's needs in the Jail were appropriately accommodated.

In response, Moore contends that the defendants' failure to accommodate him by giving him assistance in showering is a clear violation of the Rehabilitation Act.

Moore's claims under the Americans with Disabilities Act and the Rehabilitation Act are redundant, and he cannot proceed on both. *See Jaros v. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012). Based on Moore's summary judgment brief, he appears to have abandoned his claim under the Americans with Disabilities Act. The court will dismiss that claim and turn to his Rehabilitation Act claim.

To succeed on a claim under the Rehabilitation Act, 29 U.S.C. §§ 794-94e, Moore must show that (1) he is a qualified person (2) with a disability and (3) the Jail denied him access to a program or activity because of his disability. *See Jaros*, 684 F.3d at 682 (citing 29 U.S.C. § 705(2)(B)); *see also Wis. Cmty. Serv. v. City of Milwaukee*, 465 F.3d 737, 746 (7th Cir. 2006)). Refusing to make reasonable accommodations is "tantamount" to denying access. *Jaros*, 684 F.3d at 682.

Moore claims that he was denied access to the shower for over seven months because he needs assistance and accommodation, and Jail staff refused to provide them to him. The defendants dispute this. They contend that the Jail's showers were fully handicap accessible and that Moore could have taken a shower every day had he wanted to. Given this factual dispute, the court will deny summary judgment as to Moore's claim under the Rehabilitation Act.

## C. Negligence Claims

The Medical Defendants contend that the court should decline to exercise supplemental jurisdiction over Moore's state law negligence claims in the event that it dismisses his claims that arise under federal law. Alternatively, they contend that the court should dismiss the claims because Moore does not have expert testimony to support his claims, because he failed to follow Chapter 655 of the Wisconsin Statutes, which sets forth the exclusive procedure for prosecuting medical malpractice claims, and because absent evidence of intentional disregard of any rights Moore is not entitled

Case 2:14-cv-00745-WED   Filed 12/21/15   Page 22 of 25   Document 83

to punitive damages. The Non-Medical Defendants contend that Moore's negligence claim must be dismissed, joining in the Medical Defendants' arguments. In response, Moore contends that the defendants did not provide him with constitutionally adequate care and were deliberately indifferent to his serious medical needs, and that the facts above are more than sufficient to establish a negligence claim under Wisconsin state law.

In order to prevail on a negligence claim under Wisconsin law, Moore must prove that there was a breach of duty owed that resulted in an injury. *See Gil v. Reed*, 535 F.3d 551, 557 (7th Cir. 2008) (citing *Paul v. Skemp*, 242 Wis. 2d 507, 625 N.W.2d 860, 865 (Wis. 2001)). Moore's negligence claim sounds in ordinary negligence, not medical malpractice, because Moore is not suing medical professionals for "negligent medical acts or decisions made in the course of rendering professional medical care." *McEvoy v. Group Health Coop. of Eau Claire*, 213 Wis. 2d 507, 530 (1997). Chapter 655 of the Wisconsin Statutes applies only to medical malpractice claims. *See* Wis. Stat. Ch 655; *McEvoy*, 213 Wis. 2d at 530. Thus, Moore need not comply with Chapter 655. (Even if Moore was proceeding on a medical negligence claim, *res ipsa loquitur* can substitute for expert testimony. *Gil v. Reed*, 535 F.3d 551, 557 (7th Cir. 2008) (citing *Gil v. Reed*, 381 F.3d 649, 659 (7th Cir. 2004)).)

The defendants have not shown that defendants Burmeister and Milwaukee County are entitled to summary judgment on Moore's negligence claim. Accordingly,

the court will deny the defendants' motion for summary judgment as to Moore's negligence claims against Burmeister and Milwaukee County.

However, the record does not support a finding that Clarke or Dembowiak were negligent. As discussed above, they were not involved in his care. As a result, the court will dismiss Clarke and Dembowiak from this action.

D.     **Summary**

In summary, the court will grant in part and deny in part the defendants' motions for summary judgment. With regard to the Medical Defendants' motion, the court will grant summary judgment as to defendants Milwaukee County Sheriff's Department, David A. Clarke, Jr., and Vicki Dembowiak. With regard to the Non-Medical Defendants' motion, the court will grant summary judgment as to defendants Milwaukee County Sheriff's Department and David A. Clarke, Jr.

The court denies summary judgment as to all remaining claims and defendants. The following claims remain: Eighth Amendment claims as to Moore's wound care and lack of shower assistance against defendant Burmeister in her individual capacity and against Milwaukee County; Rehabilitation Act claim against Milwaukee County; and a Wisconsin state law negligence claim against defendants Burmeister and Milwaukee County.

**IT IS THEREFORE ORDERED** that defendants Burmeister, Clarke, Dembowiak, Milwaukee County, and Milwaukee County Sheriff's Department's motion for summary judgment (ECF No. 51) is **GRANTED IN PART AND DENIED IN PART** as described herein.

**IT IS FURTHER ORDERED** that defendants Burmeister, Clarke, Milwaukee County, and Milwaukee County Sheriff's Department's motion for summary judgment (ECF No. 58) is **GRANTED IN PART AND DENIED IN PART** as described herein.

**IT IS FURTHER ORDERED** that defendants Clarke, Dembowiak, and Milwaukee County Sheriff's Department are **DISMISSED** from this action.

Dated at Milwaukee, Wisconsin this 21st day of December, 2015.

WILLIAM E. DUFFIN
U.S. Magistrate Judge